UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MURPHY,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>  Defendant. | No. 2:14-cv-01634 CKD (TEMP)<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1] For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On July 6, 2011, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). (Transcript ("Tr") at 17, 112, 187-89.) On July 12, 2011, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act. (Id. at 17, 113, 195-203.) Both applications alleged that plaintiff's disability

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See Dkt. Nos. 9 & 10.)

commenced on July 24, 2009.  (Id. at 17, 187-91, 195-203.)  Plaintiff's applications were denied initially, (id. at 142-46), and upon reconsideration.  (Id. at 150-55.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on December 11, 2012.  (Id. at 56-89.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 56-57.)  In a decision issued on January 24, 2013, the ALJ found that plaintiff was not disabled.  (Id. at 31.)  The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since July 24, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: diabetes, obesity, bipolar disorder and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant had (sic) lift and carry occasionally and 25 pounds frequently; sit for 6 hours, stand and walk for 6 hours in an 8-hour workday; no postural limitations; and should avoid ladders, ropers and scaffolds.  The claimant is able to perform simple repetitive tasks; maintain concentration, persistence and pace relating to simple repetitive tasks; interact with supervisors, coworkers and public; and unable to work in competitive environment.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on June 4, 1965 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

>framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>11. The claimant has not been under a disability, as defined in the Social Security Act, from July 24, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 19-31.)

On May 30, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's January 24, 2013 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 11, 2014.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

/////

3

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his pending motion plaintiff asserts the following four principal errors: (1) "There is no Evaluation of Mental RFC"; (2) "There is no Medical or Rational Evaluation at Step Three"; (3) There is no Evaluation of Physical RFC"; and (4) "There is no Real Claimant or Third-Party Credibility Evaluation." (Pl.'s MSJ (Dkt. No. 15) at 6-13.[2])

**I.  Mental RFC**

Plaintiff argues that, in determining plaintiff's mental residual functional capacity, the ALJ's decision fails to discuss plaintiff's functioning. (Id. at 7.) Plaintiff's assertion is incorrect.

In this regard, the ALJ's decision discussed the "severity of [plaintiff's] mental impairments." (Tr. at 21.) Specifically, the ALJ discussed plaintiff's activities of daily living, finding that plaintiff had only mild restrictions based in part on plaintiff statements that he was a

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

recovering alcoholic, was not currently using drugs, was able to travel by bus and was independent in basic activities of daily living such as shopping, cooking, grooming, cleaning, etc. (Id. at 21.) The ALJ's decision also discussed plaintiff's social functioning, finding that plaintiff had moderate difficulties based on plaintiff's statements that he rarely goes out of the house, never without a friend, and has problems getting along with people. (Id. at 22.) The ALJ's decision also discussed plaintiff's ability to maintain concentration, persistence or pace, finding that plaintiff had moderate difficulties in this area of functioning based on plaintiff's testimony that he is unable to focus, complete tasks, has poor concentration and memory problems. (Id.)

Moreover, the ALJ's decision also discussed the medical opinion evidence relevant to plaintiff's mental residual functional capacity. In this regard, the ALJ's decision discussed the opinion of Dr. Troy Ewing, a psychologist, who examined plaintiff on July 23, 2010, and opined that plaintiff was capable of performing "one or two step simple repetitive tasks <u>and</u> is able to adequately perform complex tasks as there are no noted intellectual impairments at this time." (Id. at 25, 342) (emphasis added). Dr. Ewing also opined that plaintiff had a fair ability to accept instructions, interact with others, maintain regular attendance, complete a normal workday or workweek, and handle work related stress. (Id. at 342.)

The ALJ's decision also discussed the opinion of Dr. Jeremy Trimble, a psychologist, who examined plaintiff on November 30, 2011, and opined that plaintiff was "able to perform detailed and complex tasks as well as simple and repetitive tasks," was able to "maintain regular attendance, persistence, and pace," and was "not limited" in his ability to perform work activities, complete a normal workday or workweek, accept instructions, interact with other or deal with the stresses encountered in a competitive work environment. (Id. at 25, 384.) In this regard, Dr. Trimble found that plaintiff's symptoms did "not appear to impair his ability to participate in activities of daily living or to be gainfully employed." (Id. at 383.)

In addition to the opinions of these examining physicians, the ALJ discussed the opinion of Dr. E. Campbell, a psychologist and non-examining state agency physician who opined that plaintiff had mild limitations in his activities of daily living and in maintaining social functioning, concentration, persistence or pace. (Id. at 24.) The ALJ afforded the opinions of Dr. Ewing, Dr.

1  Trimble and Dr. Campbell "[g]reat weight," because they were "substantially consistent with
2  each other in finding" that plaintiff could perform simple repetitive tasks, and because the
3  opinions of Dr. Trimble and Dr. Campbell were based on their own examinations and findings,
4  which were "consistent with the overall mental health records." (Id. at 25.)
5      Plaintiff argues that the opinions were not "consistent with each other or with the treating
6  record." (Pl.'s MSJ (Dkt. No. 15) at 8.) As noted above, however, the ALJ correctly
7  characterized the opinions as substantially consistent in finding that plaintiff could perform
8  simple repetitive tasks, not that the opinions were entirely consistent with each other. Moreover,
9  the ALJ also correctly noted that the opinions of Dr. Trimble and Dr. Campbell were based on
10 their own individual examinations and findings. See Andrews v. Shalala, 53 F.3d 1035, 1041
11 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the
12 opinion of a nontreating source is based on independent clinical findings that differ from those of
13 the treating physician, the opinion of the nontreating source may itself be substantial evidence; it
14 is then solely the province of the ALJ to resolve the conflict.").
15     Accordingly, for the reasons stated above, plaintiff is not entitled to relief with respect to
16 this claim.
17     **2)**     **Step Three Evaluation**
18     Plaintiff's motion also argues that the ALJ's step three evaluation "was not only non-
19 medical but full of irrelevant facts." (Pl.'s MSJ (Dkt. No. 15) at 10.)
20     At step three of the sequential evaluation, an ALJ must consider whether a claimant has an
21 impairment or combination of impairments so severe that it meets or medically equals an
22 impairment included in the federal regulations' listing of disabling impairments. If so, the
23 claimant qualifies for benefits and the sequential evaluation ends. 20 C.F.R. § 404.1520(d).
24     "An ALJ must evaluate the relevant evidence before concluding that a claimant's
25 impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to
26 support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503,
27 512 (9th Cir. 2001). In this regard, "in determining whether a claimant equals a listing under step
28 three of the Secretary's disability evaluation process, the ALJ must explain adequately his

evaluation of alternative tests and the combined effects of the impairments." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

However, "Marcia simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" Lewis, 236 F.3d at 513.  "Moreover, '[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.'" Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005)).

Here, the ALJ's step three analysis begins by finding that:

> Although the claimant has 'severe' impairments, objective findings and functional limitations do not meet the criteria of any listed impairments . . . . No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing Impairments.

(Tr. at 21.)  The ALJ's decision then addressed plaintiff's testimony and statements to examining physicians in evaluating the paragraph B and C criteria.[3]  While plaintiff criticizes the ALJ's analysis as "not only non-medical but full of irrelevant facts," aside from disagreeing with the ALJ's characterization of the evidences, plaintiff fails to cite to evidence that would disprove the ALJ's findings.  (Pl.'s MSJ (Dkt. No. 15) at 11.)

Accordingly, for the reasons stated above, plaintiff is not entitled to relief with respect to this claim.

**3)  Physical RFC**

Plaintiff's motion next argues that "[a]s with mental impairment, there is no function-by-function explanation of the decision's physical RFC."  (Pl.'s MSJ (Dkt. No. 15) at 11-12.)  The

---

[3] "In order to meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work." Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001).

ALJ's decision, however, explicitly addressed and evaluated plaintiff's subjective testimony, the objective medical evidence and medical opinions in determining plaintiff's residual functional capacity.

In this regard, the ALJ's decision discussed plaintiff's subjective testimony and, for the reasons explained below, rightfully found plaintiff's testimony to be less than fully credible. (Tr. at 23-25.) The ALJ's decision also recounted and discussed plaintiff's "minimal and sporadic medical records," which were "inconsistent" with his "allegations." (Id. at 26.) The ALJ's decision also recounted the opinions of examining physicians Dr. Christine Fernando and Dr. Sanford Selcon. (Id. at 24.)

Dr. Fernando opined that plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, while sitting, standing or walking up to 6 hours in an 8-hour day. (Id. at 352.) Dr. Selcon opined that plaintiff had "no functional limitations." (Id. at 372.) The ALJ afforded the opinions of Dr. Fernando and Dr. Selcon "[g]reat weight" as they were "substantially consistent with each other," and "were based on their own individual and direct examination, observations and objective findings, and consistent with the overall physical medical records."[4] (Id. at 24.)

Accordingly, for the reasons stated above, the court finds that plaintiff is not entitled to relief with respect to this claim.

**4)** **Credibility Evaluation**

Plaintiff argues that the ALJ's treatment of plaintiff's testimony and a third-party statement constituted error. (Pl.'s MSJ (Dkt. No. 12) at 12-13.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment

---

[4] Plaintiff argues that the examining physician opinions "are different: one said basically 'medium,' and the other opined no functional limits." (Pl.'s MSJ (Dkt. No. 15) at 12.) The opinions of Dr. Fernando and Dr. Selcon, however, were substantially similar in that both opinions found that plaintiff could perform at least the ALJ's residual functional capacity determination.

> which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, with respect to plaintiff's credibility, the ALJ found that:

> The overall minimal and sporadic medical treatment records, mental status examinations, and claimant's testimony challenge a finding that [plaintiff] is completely credible and show his physical and mental impairments are not as limiting and debilitating as he alleges.

9

(Tr. at 29.) In this regard, the ALJ's decision noted that while plaintiff alleged an onset date of July 24, 2009, "a review of the physical and mental health records are devoid of any records for 2009 and 2010; and are minimal and sporadic for 2011 and 2012." (Tr. at 25.)

The ALJ may consider a plaintiff's conservative medical treatment, or lack of treatment, in making a credibility determination. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); Parra, 481 F.3d at 751 ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); Burch, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

With respect to the third party statement, the testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006). Lay witness testimony "cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give specific reasons germane to each particular witness in doing so. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).

Here, the ALJ's decision discussed the third party statement offered by plaintiff's girlfriend, noting that it "corroborated some subjective complaints reported by" plaintiff, but found the "statements regarding functional limitations . . . inconsistent with medical opinions of record, the objective findings and the record as a whole." (Tr. at 29.) In this regard, the ALJ's decision provided specific and germane for rejecting the third party statement. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for

discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason."); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Accordingly, for the reasons stated above, plaintiff is not entitled to relief with respect to this claim.

## CONCLUSION

For all the reasons stated above, the court finds that plaintiff is not entitled to summary judgment in his favor with respect to any of his arguments.

Therefore, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 15) is denied;
2. Defendant's cross-motion for summary judgment (Dkt. No. 22) is granted; and
3. The decision of the Commissioner of Social Security is affirmed.

Dated: March 3, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

BVD\murphy1634.ord.docx